United States Bankruptcy Court
District of NEW JERSEY ( Trenton )

In re Crystal Ramirez ,

Case No. 12-34475
Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any part to the reaffirmation agreement.

1. Creditor's Name: M&T Bank

2. Amount of the debt subject to this reaffirmation agreement:
   $31,799.61 on the date of bankruptcy, $31,799.61 to be paid under reaffirmation agreement

3. Annual percentage rate of interest: 6.39% prior to bankruptcy 6.39% under reaffirmation agreement (x Fixed Rate __ Adjustable Rate)

4. Repayment terms (if fixed rate): $ 517.71 per month for 74 months

5. Collateral, if any, securing the debt: Current market value: $30,289.00
   Description: 10 Toyota 5TDBK3EH9AS027232

FILED
JAMES J. WALDRON, CLERK
JAN 14 2012
U.S. BANKRUPTCY COURT
TRENTON, N.J.
BY ______ DEPUTY

6. Does the creditor assert that the debt is nondischargeable? ___ Yes X No
   (If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

Debtor's Schedule I and J Entries

7A. Total monthly income from Schedule I, line 16 $ 5669.76

8A. Total monthly expenses From Schedule J, line 18 $ 5625

9A. Total monthly payments on Reaffirmation debts not listed on Schedule J $ 0

Debtor's Income and Expenses as Stated on Reaffirmation Agreement

7B. Monthly income from all sources after payroll deductions $ 5669.76

8B. Monthly expenses $ 5625

9B. Total monthly payments on reaffirmed debts not included in monthly expenses $ 0

10B. Net monthly income $ 5625
(Subtract sum of lines 8B and 9B from

Line 7B. If total is less than zero, put the number in brackets.)

11. Explain with specificity and difference between the income amounts (7A and 7B):

______________________________________________

______________________________________________

12. Explain with specificity any difference between the expense amounts (8A and 8B):

______________________________________________

______________________________________________

If line 11 or 12 is completed, the undersigned debtor, and join debtor if applicable, certifies that any explanation contained on those lines is true and correct.

______________________________ Signature of Debtor (only required if Line 11 or 12 is completed)

______________________________ Signature of Joint Debtor (if applicable, and only required if line 11 or 12 is completed)

Other Information

Check this box if the total on like 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises ( unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt: ______________________________

______________________________________________

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?

_______ Yes _______ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?

_______ Yes _______ No

**FILER'S CERTIFICATION**

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

______________________________

Signature

Print/Type Name & Signer's Re

Christina Ruggiero

Bankruptcy Specialist

B240A (Form B240A) (4/10)

Check one.
__ Presumption of Undue Hardship
X No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

__ District of **NEW JERSEY ( Trenton )**

In re: **Crystal Ramirez** ,
*Debtor*

Case No. **12-34475**

Acct# **4799**

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor: M&T BANK**

_____ Check if Creditor is a Credit Union

**PART I. REAFFIRMATION AGREEMENT**

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: **auto**
*For example, auto loan*

B. ***AMOUNT REAFFIRMED:*** **$31,799.61**

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before **October 06, 2012** , which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Pat V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is **6.39%**.

Revolving lines of credit with multiple lines having different rates

*See the definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* x Fixed rate Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

A. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

x a. **$ 517.71** per month for **74** months starting on **12/1/2012**.

___

Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

Your first payment in the amount of _is due on , but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

A. Describe the collateral, if any, securing the debt:

Description: **10 Toyota 5TDBK3EH9AS027232**

Current Market Value: **$30,289.00**

B. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

_x Yes. What was the purchase price for the collateral? **$31,858.99**

No. What was the amount of the original loan?

A. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

| | **Terms as of the Date of the Bankruptcy** | **Terms After Reaffirmation** |
|---|---|---|
| **Balance due** *(including fees and costs)* | **$31,799.61** | **$31,412.68** |
| **Annual Percentage Rate** | **6.39%** | **6.39%** |
| **Monthly Payment** | **$ 517.71** | **$ 517.71** |

B. ______ Check if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit, and any other terms on future purchases and advances using such credit:

**PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

A. Were you represented by an attorney during the course of negotiating this agreement?
Check one. ______ Yes ______ No

B. Is the creditor a credit union?
Check one. ______ Yes ______ No

C. If your answer to EITHER question A or B above is "No," complete 1 and 2 below.

1. Your present monthly income and expenses are:
   a. Monthly income from all sources after payroll deductions (take-home pay plus any other income) $ 5669 75

   b. Monthly expenses (including all reaffirmed debts except this one) $ 5151

   c. Amount available to pay this reaffirmed debt (subtract b. from a.) $ 518

   d. Amount of monthly payment required for this reaffirmed debt $ 518

*If the monthly payment on this reaffirmed debt (line d.)* ***is greater than*** *the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page on that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   __X__ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   ______ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

______ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says, "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

1. I agree to reaffirm the debt described above
2. Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;
3. The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;
4. I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and
5. I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 11/15/12 Signature ______________________

Date ____________ Signature ______________________

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor **M&T Bank** — *Print Name*     **1100 Wehrle Dr., Williamsville, NY 14221** — *Address*

**Christina Ruggiero** — *Print Name of Representative*     Christina Ruggiero — *Signature*     **11/15/2012** — *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

______ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 12/10/12 Signature of Debtor's Attorney ______________________

Print Name of Debtor's Attorney Michele LaBayer

## PART V. DISCLOSURE STAETMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you no not pay or default on the debt. If the collateral is personal property this is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

      i. **If the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

      ii. **If the creditor is a Credit Union**, your reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion to get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do no have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make that you have received a copy of the Disclosure Statement and a completed signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

C. **DEFINITIONS**

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid feeds and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461 (b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

RETAIL INSTALLMENT CONTRACT
**M&T BANK**
SIMPLE INTEREST
NEW JERSEY MOTOR VEHICLE

Dated 07/17/2012 Account # ______

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ N/A |
|---|---|---|---|---|
| 6.39 % | $ 6969.26 | $ 31858.99 | $ 38828.25 | $ 38828.25 |

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 75 | $ 517.71 | Monthly, beginning 08/31/2012 |
| | $ N/A | |

Filing Fees: $ N/A

**Security:** You are giving a security interest in the motor vehicle being purchased.

**Late Charge:** If a payment is more than 10 days late, you will be charged $10.00.

**Prepayment:** If you pay off early, you may have to pay a penalty.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties. e means estimate

In this Contract, we are the SELLER. LAKEWOOD TOYOTA INC. RT 88 LAKEWOOD, NJ 08701
Name Address Zip Code

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee.

You are the BUYER(S). CRYSTAL RAMIREZ 477 HORIZON DRIVE EDISON NJ 08817
Name(s) Address(es) Zip Code(s)

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U/D | Year and Make | Model | Body Style | No. Cyl. | Truck Ton Capacity | Vehicle Identification No. |
|---|---|---|---|---|---|---|
| U | 2010 TOYOTA | HIGHLANDER | 4X4 SUV | 6 | | 5TDBK3EH9AS027232 |

**TRADE-IN:** You have traded in the following vehicle: 02 TOYOTA
Year and Make Model

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from liens, claims, encumbrances or security interests, except as shown in the "Cash Price, Downpayment and Trade-In" section as the amount of the "Lien Payoff".

**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured and to name us as "loss-payee" on the policy.

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance, Credit Disability Insurance and Credit Involuntary Unemployment Insurance are not required to obtain credit and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit.

By signing, you select Single Credit Life Insurance, which costs $ N/A What is your age? ____ Yrs.

X ______ Signature of Buyer to be insured for Single Credit Life Insurance

Insurer: ______ Term: ______
Address: ______

By signing, you select Single Credit Disability Insurance, which costs $ N/A What is your age? ____ Yrs.

X ______ Signature of Buyer to be insured for Single Credit Disability Insurance

Insurer: ______ Term: ______
Address: ______

By signing, you both select Joint Credit Life Insurance, which costs $ N/A What are your ages?
1. X ______ ____ Yrs.
2. X ______ ____ Yrs.
Signatures of both Buyers to be insured for Joint Credit Life Insurance

Insurer: ______ Term: ______
Address: ______

By signing, you both select Joint Credit Disability Insurance, which costs $ N/A What are your ages? Percentage to be insured?
1. X ______ ____ ____ %
2. X ______ ____ ____ %
Signatures of both Buyers to be insured for Joint Credit Disability Insurance

Insurer: ______ Term: ______
Address: ______

By signing, you select Single Credit Involuntary Unemployment Insurance, which costs $ N/A What is your age? ____ Yrs.

X ______ Signature of Buyer to be insured for Single Credit Involuntary Unemployment Insurance

Insurer: ______ Term: ______
Address: ______

By signing, you both select Joint Credit Involuntary Unemployment Insurance, which costs $ N/A What are your ages? Percentage to be insured?
1. X ______ ____ ____ %
2. X ______ ____ ____ %
Signatures of both Buyers to be insured for Joint Credit Involuntary Unemployment Insurance

Insurer: ______ Term: ______
Address: ______

| Cash Price, Downpayment and Trade-In | |
|---|---|
| Cash Price (including accessories, services and taxes) | $ 27706.99 |
| Cash Downpayment | $ N/A |
| Value of Trade-In | $ 5200.00 |
| Lien Payoff | $ 5200.00 |
| Lien Payoff to: | |

| Itemization of Amount Financed | |
|---|---|
| Unpaid Cash Price Balance | $ 27706.99 |
| Amounts Paid to Others on Your Behalf* | |
| License, Tags and Registration | $ 09.00 |
| Lien Fees | $ N/A |
| To Credit Insurance Company | $ N/A |
| To Property Insurance Company | $ N/A |
| To: SERVICE CONTRACT | $ 2800.00 |
| To: DOC FEE | $ 349.00 |
| To: | $ N/A |
| To: | $ N/A |
| Other Amounts Financed | |
| To Seller for GAP Coverage | $ 895.00 |
| For: | $ N/A |
| For: | $ N/A |
| Amount Financed | $ 31858.99 |

*We may be retaining a portion of these amounts if permitted by applicable law.

**DEBT CANCELLATION COVERAGE IS NOT REQUIRED:** Debt Cancellation Coverage provides for the cancellation of your liability for amounts you owe under this Contract in excess of the value of the Vehicle in the event of a total loss of the Vehicle. This is sometimes called "GAP" coverage. GAP coverage is not required to obtain credit and will not be provided unless it is offered and you sign a separate GAP Notice requesting GAP coverage, which means you want GAP coverage and agree to pay the additional cost disclosed in the "Itemization of Amount Financed".

**ASSIGNEE:** We intend to assign this Contract and Security Agreement to the Assignee named in this provision. If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee's name and address is:

**M&T BANK**
**Installment Loan Operations, One Fountain Plaza, P.O. Box 4005**
**Buffalo, New York 14240**

**CO-SIGNER:** Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. Co-Signer will not be an Owner of the Vehicle.

**CO-OWNER:** Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

**TERMS:** The terms shown in the boxes above are part of this Contract.

**PROMISE TO PAY:** You agree to pay us the Total Sale Price for the Vehicle by making the Total Downpayment and paying us the Amount Financed plus interest at the Annual Percentage Rate shown above. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

**SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give us a security interest in the Vehicle, in all parts (called "Accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds.

**ADDITIONAL TERMS AND CONDITIONS:** THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

SELLER LAKEWOOD TOYOTA INC.

BY: X [signature] (SEAL) 07/17/2012
Date

**NOTICE TO RETAIL BUYER(S): DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO A COPY OF THIS CONTRACT AT THE TIME YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. BUYER(S) ACKNOWLEDGE(S) RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

BUYER X [signature] (SEAL) Date 07/17/2012

BUYER X ______ (SEAL) Date 07/17/2012

**CO-SIGNER: YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE FORM, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.**

**CO-SIGNER'S AGREEMENT:** You, the person (or persons) signing below as "Co-Signer", promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

X ______ (SEAL) ______ ______
Co-Signer's Signature Address Date

X ______ (SEAL) ______ ______
Co-Signer's Signature Address Date

**CO-OWNER'S SECURITY AGREEMENT:** You, the person signing below as "Co-Owner", together with the Buyer(s) being all of the Owners of the Vehicle, give us a security interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

X ______ ______ ______
Co-Owner's Signature Address Date

**ASSIGNMENT**

The Seller agrees to be bound by all provisions of this Contract. Also, for value received and intending to be legally bound hereby, the Seller (a) assigns this Contract to the Assignee pursuant to and subject to all terms and conditions of the dealer agreement currently in effect between Seller and Assignee and (b) makes, with respect to this Contract, all warranties and representations set forth in such dealer agreement. Whether or not Seller signs this Assignment, and if Assignee takes assignment of the Contract from the Seller, then such assignment shall be deemed to be "without recourse", pursuant to the dealer agreement, and made as of the date of the Contract. For purposes of this Assignment, Seller hereby appoints Assignee as its attorney-in-fact to supply any missing signature of Seller hereunder.

07/17/2012 LAKEWOOD TOYOTA INC [signature]
Date Name of Seller Signature and Title of Person signing for Seller

**No Cooling Off Period**

**State law does not provide for a "cooling off" or other cancellation period for this Contract. Therefore, you cannot later cancel this Contract simply because you change your mind or wish you had acquired a different item. After you sign above, you may only cancel this Contract for legally valid reasons.**

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

FORM [illegible] 2/25/2004
© 2004 Wolters Kluwer Financial Services - BANKO

WHITE - ORIGINAL TO M&T - CANARY - Buyer's Copy - PINK - Co-Signer's Copy - GOLDENROD - Seller's Copy

## REVERSE SIDE - ADDITIONAL TERMS AND CONDITIONS

**1. HOW THE TOTAL OF PAYMENTS IS COMPUTED:** The Total of Payments is the sum of the Amount Financed and the Finance Charge. The Finance Charge consists solely of interest computed daily on the outstanding balance of the Amount Financed. The Finance Charge shown on the front side has been computed on the assumption that we will receive all payments on their scheduled due dates.

**2. COMPUTING INTEREST:** We will charge interest on a daily basis on the outstanding balance subject to interest on each day of the loan term. The daily interest rate is equal to the Annual Percentage Rate divided by the number of days in that calendar year. Buyer agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge). Early payments will result in less interest being charged. Early and/or late payments will cause the amount of the final payment to change.

**3. APPLICATION OF PAYMENTS:** We will apply your payments first to interest, then to other charges that you agreed to under this Contract which may become due (such as late charges) in any order that we choose, and then to the unpaid principal balance.

**4. PREPAYMENT:** You may prepay, in full or in part, the amount owed on this Contract at any time, although if you prepay this Contract in full within 12 months from the date shown on the front side, you agree to pay a charge as follows: $20.00 if the Amount Financed is $2,000.00 or less; 1% of the initial Amount Financed if the Amount Financed is between $2,001.00 and $5,000.00; and $100.00 if the Amount Financed is $5,001.00 or more. If you prepay this Contract in part, you agree to continue to make regularly scheduled payments until you pay all amounts due under this Contract. This will reduce the number of payments you will make.

**5. LATE CHARGES:** If any installment owing under this Contract is overdue for more than 10 days, you will pay a late charge of $10.00.

**6. RETURNED CHECK CHARGE:** If any payment is made with a check which is dishonored by the drawee, or if a funds transfer by automated means is not completed, then unless prohibited by law, you agree to pay us an Insufficient Funds Fee of $20.00.

**7. WAIVERS:**

**a. WAIVER BY SELLER AND ASSIGNEE:** If you have or make in the future another loan agreement with the Assignee, the Assignee might obtain a security interest in your principal dwelling or that of someone else to secure that other loan agreement. That security agreement may provide that the principal dwelling secures not only that other loan agreement but also all other loan agreements of yours with the Assignee. The Assignee waives (gives up) any right to claim a security interest in the principal dwelling of any person to secure this Contract unless the security interest is specifically given to secure this Contract and is permissible under applicable law.

**b. WAIVERS BY BUYER, CO-SIGNER AND CO-OWNER:** You agree to make all payments on or before they are due without our having to ask. You agree that we may give up our rights against some other person but not against you. You waive due diligence in collection and all defenses based on suretyship and impairment of collateral or security.

**8. INTEREST AFTER MATURITY AND JUDGMENT:** Interest at the rate provided in this Contract shall continue to accrue on the unpaid balance until the unpaid balance is paid in full, even after maturity and/or after we get a judgment against you for the amounts due. This will apply even if the maturity occurs because of acceleration due to a default by you. If at any time interest as provided for in this paragraph is not permitted by law, interest shall accrue at the highest rate allowed by applicable law beginning at that time.

**9. YOUR PROMISES ABOUT OUR SECURITY INTEREST:** You will not permit anyone other than us to obtain a security interest or other rights in the Vehicle. You will pay all filing fees necessary for us to obtain and maintain our security interest in the Vehicle. You will assist us in having our security interest noted on the Certificate of Title to the Vehicle, including signing documents that we believe are necessary to protect our security interest in the Vehicle. You will not sell or give away the Vehicle. If someone puts a lien on the Vehicle, you will promptly pay the obligation and clear the lien.

**10. YOUR PROMISES ABOUT THE VEHICLE:** You will keep the Vehicle in good condition and repair. You will pay all taxes and charges on the Vehicle. You will pay all costs of maintaining the Vehicle. You will not abuse the Vehicle or permit anything to be done to the Vehicle which will reduce its value, other than for normal wear and use. You will immediately notify us in writing if the Vehicle is lost, stolen, damaged or destroyed. You will not use the Vehicle for illegal purposes or for hire or lease. You will not move the Vehicle from your address shown on the front of this Contract to a new permanent place of garaging without notifying us in writing first.

**11. YOUR PROMISES ABOUT INSURANCE:** You will keep the Vehicle insured against fire, theft and collision until all sums due us are paid in full. The insurance coverage must be satisfactory to us and protect your interests and our interests at the time of any insured loss. The insurance cannot be subject to a deductible amount greater than $500.00. The insurance must name us as "loss-payee" on the policy. The insurance must be written by an insurance company qualified to do business in New Jersey and licensed to sell insurance in the state where the Vehicle is permanently garaged. The insurance policy must provide us with at least 10 days prior written notice of any cancellation or reduction in coverage. On request, you shall deliver the policy or other evidence of insurance coverage to us. In the event of any loss or damage to the Vehicle, you will immediately notify us in writing and file a proof of loss with the insurer. We may file a proof of loss on your behalf if you fail or refuse to do so. We may apply any insurance proceeds we receive to repair or replace the Vehicle if, in our opinion, it is economically feasible and you are not then in Default under this Contract. Otherwise, we will apply the insurance proceeds to reduce the unpaid balance due us.

**12. RISK OF LOSS:** You will be bound by this Contract even if the Vehicle is lost, stolen, damaged or destroyed.

**13. OUR RIGHTS IF YOU BREAK YOUR PROMISES ABOUT THE SECURITY INTEREST, VEHICLE OR INSURANCE:** If you fail to keep your promises to pay filing fees, taxes, or liens, we may advance any money you promised to pay. **IF YOU FAIL TO KEEP YOUR PROMISES ABOUT REQUIRED INSURANCE WE MAY ADVANCE MONEY TO OBTAIN INSURANCE TO COVER LOSS OR DAMAGE TO THE VEHICLE. THE INSURANCE WE BUY FOR YOU COULD BE MUCH MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE YOU COULD BUY YOURSELF.** We have the choice of whether or not to advance any money for these purposes. Such insurance will be limited to an amount not greater than the amount you owe on this Contract. You agree to repay the money advanced by us as you may specify: (i) immediately on demand; (ii) along with your monthly payments; or (iii) in a lump sum at or before the end of the term of this Contract. If you choose to repay the money advanced along with your monthly payments, we can choose the amount of these payments and how long you have to repay. If any of our rights stated in this paragraph are not permitted by law, we still have the other rights mentioned. Our payments on your behalf will not cure your failure to perform your promises in this Contract.

**14. DEFAULT:** In this paragraph "You" means the Buyer and Co-Signer and Co-Owner, or any one of them. You will be in "Default" of the Contract if any one or more of the following things happen:

a. You do not make any payment on or before it is due and the installment remains unpaid for more than 10 days; or

b. You do not keep any promise you made in this Contract; or

c. You do not keep any promise you made in another Contract, Note, Loan or Agreement with Seller or Assignee; or

d. You made any untrue statement in the credit application for this Contract; or

e. You committed any forgery in connection with this Contract; or

f. You die, are convicted of a crime involving fraud or dishonesty, or are found by a court with jurisdiction to do so to be incapacitated; or

g. You file bankruptcy or insolvency proceedings, or anyone files bankruptcy or insolvency proceedings against you; or

h. You take the Vehicle outside the United States or Canada without our written consent; or

i. You use the Vehicle or allow someone else to use it in a way that causes it not to be covered by your insurance; or

j. You do something that causes the Vehicle to be subject to confiscation by government authorities; or

k. The Vehicle is lost, stolen, destroyed or damaged beyond economical repair, and not fixed or found within a reasonable time; or

l. Another creditor tries to take the Vehicle by legal process; or

m. If in our judgement, and permissible under applicable law, the prospect of payment, performance of this Contract, or realization of the Vehicle is significantly impaired; or

n. Any tax or other involuntary lien is filed against the Vehicle.

**15. OUR RIGHTS IF YOU ARE IN DEFAULT OF THIS CONTRACT:** If you are in Default of this Contract, we may enforce our rights according to law. We may also do the things specifically mentioned in this Contract. We may do one of these things and at the same time or later do another. Some of the things we may do are the following:

a. **ACCELERATION:** If you are in Default because you have not made a required payment when due and the installment has remained unpaid for more than ten (10) days or your have failed to maintain any required insurance, we can demand that you pay us the entire unpaid balance owing on this Contract and all unpaid finance charges and other money due. You agree that you will pay this money to us in one single payment immediately upon receiving our demand.

b. **REPOSSESSION:** We can repossess the Vehicle, unless prohibited by law. We can do this ourselves, have a qualified person do it for us, or have a government official (by replevin) do it for us. You agree that we can peaceably come on to your property to do this. We may take any other things found in the Vehicle, but will return these things to you if you ask. If you want these things back, you agree to ask us in a letter sent to us by certified mail within a reasonable time. You agree that we may use your license plates in repossessing the Vehicle and taking it to a place for storage.

c. **VOLUNTARY DELIVERY:** We can ask you to give us the Vehicle at a reasonably convenient place. You agree to give us the Vehicle if we ask.

d. **DELAY IN ENFORCEMENT:** We can delay enforcing our rights under this Contract without losing any rights.

e. **SALE:** If repossessed, we will sell the Vehicle. The money received at sale will be used to pay costs and expenses of repossession and sale, and then to pay the amount you owe on this Contract.

f. **SURPLUS OR DEFICIENCY:** If there is money left from the sale of the Vehicle, we will pay it to the Buyer. If there is not enough money from the sale to pay what you owe, and if a deficiency is permitted under applicable law, Buyer and Co-Signer agree to pay what is still owed to us.

g. **EXPENSES:** You agree to pay the costs of repossessing, storing, repairing, preparing for sale and selling the Vehicle as may be allowed by law.

**16. MECHANICAL BREAKDOWN PROTECTION, SERVICE PLAN AND WARRANTY** (collectively "Service Contract"): In the event that you are entitled to make any claim under any Service Contract applicable to the Vehicle, you will immediately file a claim with the service company. We may file such a claim on your behalf if you fail or refuse to do so. If you are in Default, we may endorse your name to any check, draft or other instrument we receive in payment of any claim under a Service Contract applicable to the Vehicle or for a refund of any unearned charge or premium.

**17. COMMUNICATIONS CONCERNING DISPUTED DEBTS:** All communications concerning disputed debts, including any payments made by check and marked "payment in full", or with other restrictive endorsements or notices, tendered as full satisfaction of your balance, must be sent to: M&T Bank, Installment Loan Operations, One Fountain Plaza, Buffalo, New York 14203. **DO NOT SEND COMMUNICATIONS CONCERNING DISPUTED DEBTS TO THE PLACE WHERE YOU SEND REGULAR MONTHLY PAYMENTS.**

**18. HEIRS AND PERSONAL REPRESENTATIVES BOUND:** After your death, this Contract shall be enforceable against your heirs and personal representatives of your estate.

**19. COLLECTION COSTS:** In the event of default, you agree to pay all our costs of collection, including court costs and reasonable attorneys' fees, to the extent permitted by law.

**20. NOTICES AND CHANGE OF ADDRESS:** Any notice we send you concerning this Contract or your property will be sent to your current mailing address shown in our records concerning this Contract. We can send it by regular mail. Any notice you send or deliver to us concerning this Contract must be in writing and be sent or delivered to: M&T Bank, Installment Loan Operations, One Fountain Plaza, P.O. Box 4005, Buffalo, New York 14240, or to any other address we specify.

**21. NO NOTICE OR LOSS OF RIGHTS:** We can exercise any right against any person or property without losing any right against you, the Vehicle, your property or any other property belonging to you now or acquired by you in the future. To the extent permitted by applicable law, we can exercise the right without notifying you unless prohibited by applicable law. We can do any of the following without notifying you or losing any right against you, the Vehicle, your property or any other property belonging to you now or acquired by you in the future: (a) give additional time for the payment of any amount payable under this Contract regardless of the number of times we previously did so and regardless of the length of any additional time we previously gave; (b) give up, fail to exercise or delay exercising any right against any person or property; (c) fail to protect any interest in any property, whether by failing to maintain any insurance, by failing to file any financing statement, by failing to be named on any certificate of title or in any other way.

For example, M&T Bank can sue you under this Contract whether or not it (a) sues anyone else; (b) repossesses and sells your Vehicle; or (c) uses any money that has been or is deposited with it by you or anyone else to pay any amount payable under this Contract but not yet paid.

**22. CHANGES AND GIVING UP OF RIGHTS BY US:** No change in this Contract can be made except in a writing signed by us. You agree to cooperate with us to correct any obvious error in our copy of this Contract. No right against you, the Vehicle or any other property belonging to you now or acquired by you in the future can be given up by us except in a writing signed by us.

**23. CLAIM FOR FAILURE TO OBTAIN INSURANCE OR SERVICE CONTRACT:** If any amount is paid under this Contract for any insurance or service contract and the insurance or service contract is not obtained for any reason, your only claim will be for a refund of that amount.

**24. INAPPLICABILITY OF CERTAIN PROVISIONS:** If the Vehicle is primarily for personal, family or household use and has a cash price of $10,000 or less, then no provision of this Contract authorizing us to act as your agent or attorney-in-fact and/or sign documents on your behalf will apply or be exercised.

**25. CONTINUED EFFECTIVENESS:** If any part of this Contract is determined by a court to be invalid, the rest will remain in effect.

**26. WHAT LAW APPLIES:** Any legal question concerning this Contract will be decided in accordance with the law of the State of New Jersey and, to the extent applicable, federal law.

**27. ASSIGNMENT BY BUYER:** Buyer shall not assign this Contract.

**THERE ARE NO WARRANTIES BY SELLER, EXPRESSED OR IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, UNLESS SELLER HAS GIVEN YOU A SEPARATE WRITTEN WARRANTY OR UNLESS SELLER ENTERS INTO A SERVICE CONTRACT WITH BUYER WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.**

### NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Buyer's Guide Window Sticker.** If the Vehicle which is described on the face of this Contract has a Buyer's Guide Window Sticker required by the Federal Trade Commission Used Car Trade Regulation Rule, the following notice applies:

**The information you see on the window form for this Vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.**

### NOTICE OF PROPOSED CREDIT INSURANCE

The signer(s) of this Contract hereby take(s) notice that Group Credit Life Insurance coverage or Group Credit Disability Insurance coverage or Group Credit Involuntary Unemployment Insurance coverage will be applicable to this Contract if so marked on the front of this Contract, and each such type of coverage will be written by the insurance company named. This insurance, subject to acceptance by the insurer, covers only the person or persons signing the request for such insurance. The amount of charge is indicated for each type of Credit Insurance to be purchased. The term of insurance will commence as of the date the indebtedness is incurred and will expire on the original scheduled maturity date of the indebtedness. Subject to acceptance by the insurer and within 15 days there will be delivered to the insured debtor(s) a certificate of insurance more fully describing the insurance. In the event of prepayment of the indebtedness, a refund of insurance charges will be made when due.

**NOTICE: SEE FRONT SIDE FOR IMPORTANT INFORMATION.**

FORM [illegible] 2/25/2009
© 2004 Wolters Kluwer Financial Services - BANCS